IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CAROL STREETER o/b/o, ) | |
| QYDELL J. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO.: 04cv1183 |
| v. ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Carol Streeter ["Streeter"] has filed this action on behalf of her minor son, Qydell Davis ["Davis"], seeking review of a final decision by the Commissioner of Social Security ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. § 1383(c)(3) (2004). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.   FACTS AND PROCEDURAL HISTORY**

At the time of his alleged disability onset date, 1 January 2002, Davis was eight years old and had been variously diagnosed with hypospadias (R. 206), chordee (R. 206), attention deficit hyperactivity disorder (R. 208), mild allergic rhinitis (R. 208), eczema (R. 208), anemia (R. 215), and oppositional defiant disorder (R. 299). Since then, he has also been diagnosed with an unspecified learning disability, generalized anxiety (R. 239) and pruritus (R. 247). A history of anemia and tachypnea have been noted (R. 218, 216), but no records

of these diagnoses exist, and his primary care physician, Dr. Caroline T. Talamayan, reported having never seen Davis in asthmatic distress (R. 216).

Streeter has twice applied for benefits, and both applications were denied (R. 32-37). After the second denial, Streeter requested and was granted a hearing before an administrative law judge, Frank M. DeBellis ["ALJ"], who issued an unfavorable decision (R. 16-26). The Social Security Administration's ["SSA"] Appeals Council ["AC"] denied her request for review of the ALJ's decision (R. 5-7), which consequently became the final decision of the Commissioner. Streeter then filed this timely lawsuit (Doc. # 1).

## II.  STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." **Miles v. Chater**, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing **Graham v. Apfel**, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence

---

[1] In **Graham v. Apfel**, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

of substantial evidence "contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." ***Miles***, 84 F. 3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.*   *Standard for Determining Disability*

A child is considered disabled and, thus, eligible for SSI benefits when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2004). Furthermore, the child cannot be engaged in substantial gainful activity. *Id.* at § 1382c(a)(3)(C)(ii).

To determine whether a child claimant is entitled to SSI benefits, the Commissioner must first determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a) (2005). If the claimant is not engaged in substantial gainful activity, the Commissioner next determines whether the claimant has "an impairment or combination of impairments that is severe." *Id.* If the claimant is found to have a severe impairment(s), the Commissioner will "review [the] claim further to see if [the claimant] ha[s] an impairment(s)

---

842 (1971).

that meets, medically equals, or functionally equals" a condition described in the SSA's "Listing of Impairments." *Id.*; *see also* 20 C.F.R. § 404, subpt. P, app. 1.

### B. *Application of the Standard: The ALJ's Findings*

After discussing the legal standards and the evidence in the record, the ALJ made the following findings:

> 1. The claimant was age eight at the time of his application and is currently age 10.
>
> 2. The claimant has never engaged in substantial gainful activity.
>
> 3. The claimant does have medically determinable impairments; generalized anxiety disorder; learning disorder, NOS; and ADHD, combined, which are "severe." A severe impairment means a medically determinable physical impairment or combination of impairments that causes more than a minimal or slight functional limitation.
>
> 4. The evidence does not show that this claimant has an impairment, or combination of impairments, which meets or equals the Listing of Impairments in Appendix 1 of Subpart P, or that the functional limitations causes by [sic] such impairment are the same as the disabling functional limitations of any listing and therefore, functionally equivalent to [sic] such listing (20 C.F.R. § 41.924 [sic]), i.e., that this claimant has a medically determinable or mental impairment (or combination of impairments) which results in marked and severe functional limitations.
>
> 5. The claimant was not under a disability as defined in the Social Security Act at any time through the date of this decision.

(R. 26). Thus, Davis failed at the third step because his impairment(s) does not meet or

medically or functionally equal any of the SSA's listings.

Streeter disagrees and contends that the ALJ "erred by according greater weight to a non-examining reviewing physician than Qydell's treating psychiatrist without clearly articulating reasons for doing so" and by "relying on a childhood disability evaluation form which did not assess all of Qydell's impairments" (Doc. # 11, pp. 6-12). Streeter's arguments lack merit.

### C. *Functional Limitations*

Streeter does not contend that Davis's impairments meet or medically equal a listing, and the errors she alleges relate solely to the ALJ's evaluation of Davis's functional limitations and determination that they do not equal those associated with any listing. *Id.* A discussion, however brief, of the process of evaluating functional equivalence is therefore necessary.

When determining a claimant's functional limitations, the Commissioner evaluates the evidence in the record regarding "how [the claimant's] functioning is affected during all ... activities." 20 C.F.R. 416.926a(b). Specifically, the Commissioner determines the extent to which a claimant's limitations affect each of six "domains," which include

- acquiring and using information;
- attending and completing tasks;
- interacting and relating with others;
- moving about and manipulating objects;

- self care; and,

- health and physical well-being.

*Id.* at (b)(1).

> We will decide that your impairment(s) functionally equals the listings if it is of listing-level severity. Your impairment(s) is of listing-level severity if you have "marked" limitations in two of the domains in paragraph (b)(1) of this section, or an "extreme" limitation in one domain. We will not compare your functioning to the requirements of any specific listing.

*Id.* at (d).

### D. *ALJ's Treatment of Davis's Treating Psychiatrist's Opinion*

Streeter contends that the ALJ erred by failing to discuss the weight given the opinion of child psychiatrist Dr. Arvind Patel ["Patel"] and by affording his opinion less weight than that of a non-examining physician (Doc. # 11, pp. 6-10). Contrary to Streeter's contentions, however, neither the opinion of the non-examining reviewer nor the ALJ's findings conflict with Dr. Patel's records and opinions.

The ALJ determined that Davis has a less than marked limitation in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being (R. 24). He found no evidence of a limitation in Davis's ability to move about and manipulate objects or to care for himself (R. 23). As the ALJ noted, his findings reflected those of "State Agency physician Robert O. Harris, M.D." ["Dr. Harris"] (R. 25).

6

With the arguable exception of the "Global Assessment of Functioning" ["GAF"] score he assigned and which the court discusses in greater detail *infra*, Dr. Patel's records offer little insight into his views of Davis's functional limitations (R. 223-29, 265-67). *See* AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th Ed., text rev., 2004) ["DSM-IV"]. Although Dr. Patel did note Davis's hyperactivity and what he perceived to be Davis's "borderline" intelligence (R. 229), most of his notes simply relate subjective statements made by Davis's mother or grandmother and observations about Davis's behavior as Dr. Patel observed during Davis's seven seemingly sporadic visits over the course of two years (R. 223-29, 265-67). Consequently, they offered the ALJ little, if any, empirical guidance in determining Davis's functional limitations.

Streeter relies heavily on Dr. Patel's having initially assigned Davis a GAF score of "about 50 to 55" (R. 229). Assuming a GAF score may constitute a valid, trustworthy medical opinion, the court is highly reluctant to rely upon a scale number that, even without Dr. Patel's expressed lack of certainty (as indicated by the qualifier "about"), is ambiguous and appears arbitrary.[2]

---

[2] A GAF score is fundamentally and irredeemably flawed and is largely irrelevant to a disability determination. *See* **Whelchel v. Barnhart**, No. 02-7149, 2004 WL 613925, at *5 (10th Cir. 2004) (holding that the ALJ did not err in not relying on a GAF score where the score was not explained, not supported by the evidence in the accompanying medical report and "may indicate problems not necessarily related to her ability to hold a job"); **Wilkins v. Barnhart**, No. 02-4302, 2003 WL 21462579, at * 4 (7th Cir. 2003) (discounting the GAF's usefulness in making disability determinations).

Its value in making a disability determination is minimal for a number of reasons. For example, it is ambiguous, as the DSM-IV itself suggests. Dr. Patel's lowest possible score assigned to Davis means that he considers Davis to suffer from *either* "serious symptoms (e.g.,

In addition to the court's general concern about the usefulness of a GAF score for the purpose of making a disability determination, Dr. Patel's assessment is particularly troubling. The six-point range Dr. Patel approximated translates to an opinion that Davis's condition ranged anywhere from only slightly serious "symptoms . . . OR . . . impairment in social, occupational or school functioning" to moderately moderate "symptoms . . . OR . . . difficulty in social, occupational, or school functioning." DSM-VI, at 34. A score of 50 falls on the borderline between conditions considered "serious" and those considered "moderate," which

---

suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV, at 34 (emphasis in original). Interpreting the meaning of the number assigned therefore generally requires a great deal of speculation.

A new addition to the DSM-IV greatly underscores this point. The manual now includes an entirely separate scale for specifically assessing a person's "social and occupational disability," the Social and Occupational Functioning Assessment Scale ["SOFAS"]. *See* DSM-IV, at 33, 817-18. "The SOFAS is a new scale that differs from the [GAF] Scale in that it focuses exclusively on the individual's level of social and occupational functioning and is not directly influenced by the overall severity of the individual's psychological symptoms." *Id.* at 817.

In addition to being ambiguous, the one-hundred-point GAF scale, which simplifies what must be an otherwise complex task undertaken by highly educated medical professionals, smacks of arbitrariness. The impairments or symptoms of a person with a GAF score of 41 or 50 would be considered "serious." Nevertheless, the same person scoring 40 or 51 would be viewed as either significantly worse, with major difficulty, or better, with only moderate difficulty. DSM-IV, at 34; *see also* DSM-IV, at 33 (equating "specific" scores with a range of numbers).

Finally, by default, a GAF score is temporal in nature and provides an indication of the patient's current condition only, unless specifically stated otherwise. DSM-VI, at 33. Thus, even multiple scores within a twelve month period offer no indication whether a claimant's alleged disability has lasted or is expected to last twelve "continuous" months. 42 U.S.C.A. § 416(I)(1); *see also* **Walker v. Apfel**, No. 98-1201, 2000 WL 724167, at *7 (S.D. Ala. May 16, 2000) (holding that a one-time GAF score of 15 "did not establish that plaintiff has marked limitations that had lasted or would be expected to last twelve months.").

are denoted by scores ranging from 51-60. *Id.*

While Dr. Patel's range of scores complicates any attempt at accurate interpretation, the range Dr. Patel chose quite clearly indicates that he viewed Davis's condition as, more likely than not, moderate, a point underscored by Dr. Patel's separate opinion that Davis's "psychosocial and environmental problems," as reflected in the doctor's "Axis IV" diagnosis, were "moderate" (R. 229).[3]  Thus, in disability evaluation terms, Dr. Patel viewed Davis's condition as less than marked, a word the SSA regulations define as "'more than moderate' but 'less than extreme.'" 20 C.F.R. 416926a(e)(2).  Therefore, the ALJ's opinion, as well as that of Dr. Harris, is consistent with Dr. Patel's opinion, and the ALJ's failure to specifically state what weight he gave Dr. Patel's opinion, assuming it was error, was harmless.

### E.   *Incomplete Childhood Disability Evaluation Form*

Streeter next points to the earlier of two childhood disability forms, which had been completed prior to Davis being diagnosed with a learning disability believed to be a form of

---

[3]According to the DSM-IV, an Axis IV diagnosis is an assessment of a patient's

- problems with primary support group
- problems related to the social environment
- educational problems
- occupational problems
- economic problems
- problems with access to health care services
- problems related to interaction with the legal system/crime
- other psychosocial and environmental problems

DSM-VI, at 32.

dyslexia and which the ALJ's opinion discussed (R. 19, 194). Because the evaluator completing this form did not, indeed could not at that time, consider Davis's learning disability, Streeter contends that consideration of this form was error (Doc. # 11, pp. 10-12).

Assuming Streeter is correct and the ALJ should not have considered this form at all, Streeter fails to demonstrate how this error prejudiced Davis in any way. Streeter concedes that the ALJ found Davis's learning disability to be a severe impairment (Doc. # 11, p. 10). Furthermore, the ALJ's thorough and thoughtful opinion makes clear that he considered all of the medical evidence in the record, including the second childhood disability form completed by Dr. Harris, who noted Davis's learning disability and whose conclusions were supported by the opinion of Davis's treating psychiatrist, as discussed *infra* (R. 239-44).

Streeter has assembled arguments using a few small, carefully-excised and unrepresentative record excerpts that, viewed in isolation, suggest discord between the ALJ's opinion and the evidence. Her methodology is suspect and her arguments, at least in some respects, disingenuous.[4] Viewed in the proper context, the ALJ's opinion is fully supported by the record as a whole, and the Commissioner's decision must therefore be affirmed.

### IV.   CONCLUSION

---

[4]For example, despite arguing that the ALJ should not have considered the earlier childhood disability form, in her reply brief Streeter restates her contention that the ALJ's failure to give weight to Dr. Patel's GAF score was error "because no matter what type of evidence it is classified as, the ALJ had a duty to consider it" (Doc. # 16, p. 2). In addition, Streeter contends in her reply brief that the ALJ "ignor[ed]" the GAF score (Doc. # 16, p. 3) when, in fact, the ALJ specifically noted the score in his opinion (R. 20).

Therefore, for the reasons discussed herein, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

Done this 14th day of November, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE